**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John BIZZELL, and Charles Kent Bizzell, Defendants–Appellants.**

**No. 90–6203.**

United States Court of Appeals, Tenth Circuit.

Dec. 13, 1990.

Sara Criscitelli, Atty., U.S. Dept. of Justice (Timothy D. Leonard, U.S. Atty., W.D. Okl., and Karen A. Morrissette and Monica J. Benton, Attys., Dept. of Justice, with her on the brief), Washington, D.C., for plaintiff-appellee.

Garvin A. Isaacs, Oklahoma City, Okl., for defendant-appellant Charles Kent Bizzell.

Ronald Evans, Oklahoma City, Okl., for defendant-appellant John Bizzell.

Before McKAY, MOORE and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal from an order of the district court denying defendants' motion to dismiss a criminal indictment on double jeopardy grounds. Defendants, who engaged in real estate transactions in Oklahoma, argue because they have been subjected by the Department of Housing and Urban Development (HUD) to civil sanctions arising from the same circumstances which predicate the criminal charges, they have already been placed once in jeopardy and the criminal charges are barred. We conclude the civil sanctions visited on defendants were in the nature of restitution and not punishment; therefore, jeopardy

has not attached. We affirm the denial of the motions to dismiss.

HUD filed administrative complaints against Charles and John Bizzell alleging numerous counts of supplying false statements and violating other HUD regulations in the sale of five properties whose mortgages HUD insured. HUD sought to suspend and debar the Bizzells from participating in any HUD programs for three years. Following the filing of the complaint, the Bizzells entered into settlement agreements with HUD. John Bizzell's agreement allowed him to accept a voluntary exclusion from HUD programs for two years conditioned upon his payment to HUD of $30,000.[1] The agreement stated the payment by John Bizzell was "solely for the settlement of this administrative action, and shall not be deemed to constitute full restitution of any kind to HUD."[2] Charles Bizzell agreed not to participate in HUD programs for eighteen months. Both agreements stated the government "does not waive any rights or responsibilities ... to investigate or bring actions pursuant to its lawful authority, including the right of the Department of Justice to bring any criminal or civil action."

Subsequently, the Bizzells have been indicted and charged with conspiracy to defraud the United States and HUD; making false statements to HUD auditors; and making false statements to HUD to obtain loans. These charges involve essentially the same transactions and violations set forth in the HUD administrative complaint leading to the settlement between the Bizzells and HUD.

Both defendants moved to dismiss the indictment on double jeopardy grounds. The court denied the motion, but suspended the trial pending this appeal.

In its ruling upon the motion, the district court found that Charles Bizzell's agreement not to participate in HUD activities for eighteen months was not a "punishment" for double jeopardy purposes. The court based its finding upon HUD policy stated in 24 C.F.R. § 24.115(b) which provides:

Debarment and suspension are serious actions which shall be used only in the public interest and for the Federal Government's protection and not for the purposes of punishment.

The court found further that this recitation of policy actually serves the function of debarment and suspension in practice, and held that the goal of protecting the integrity of public programs was remedial and not punitive in nature. The court therefore concluded the debarment and suspension agreements between HUD and Charles Bizzell were not a punishment in the double jeopardy sense.

The $30,000 sanction agreed to be paid by John Bizzell was looked upon in a different manner, however, by the district court. Because it found the sanction bore no relation to a remedial goal, the court concluded the monetary sanction was a punishment. The court further believed because HUD was able to subsequently negotiate with a third party to minimize its financial losses resulting from the Bizzell transactions, the government's only monetary losses were the costs of investigation and litigation. Pegging those losses at approximately $2,000, the court reasoned the $30,000 sanction was grossly disproportionate and, hence, punitive in nature. This conclusion notwithstanding, the court refused to dismiss the indictment because it did not trigger the multiple prosecution aspect of double jeopardy since John Bizzell has not previously been subjected to criminal prosecution.

■ Relying upon *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Bizzells argue the indictment itself violates the Double Jeopardy Clause because the civil settlement as a whole constituted punishment. Because the Bizzells have not previously been subject to criminal prosecution, the government first questions whether the case is properly postured for review and, second,

---

1. Only $10,000 of this sum has been paid by Mr. Bizzell.

2. The district court noted that the $30,000 represented only a portion of HUD's losses.

contends the Bizzells' reliance upon *Halper* is misplaced.

The question of the ripeness of this appeal is alluring, but we cannot succumb. The government argues the Bizzells have not been subjected to criminal prosecution prior to the institution of the present charges; therefore, they have not been exposed to jeopardy. This, the government urges, takes the case out from under the aegis of *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Because *Abney* permits interlocutory appeals to allow defendants to avoid exposure to double jeopardy and thus implements full protection of the Clause, *id.* at 662, 97 S.Ct. at 2041, the government urges prior prosecution is a condition precedent to a valid *Abney* appeal.

Yet, we are unable to resolve the jurisdictional issue without first determining whether the Bizzells have been previously placed in jeopardy. Moreover, we believe the cause of judicial economy requires us to resolve the double jeopardy issues so that they will not needlessly infect the trial of this case. Thus, in the narrow context of the facts before us, we proceed to determine the propriety of the trial court's rulings.

We commence our analysis with a brief visit to the Double Jeopardy Clause itself. Although defendants would like us to blur distinctions, there are three prongs to the Double Jeopardy Clause:

> The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).

■■■ The Bizzells argue vociferously that the administrative complaint constituted a "prosecution" for double jeopardy analysis, but we are not persuaded. Jeopardy attaches only in a criminal proceeding, *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548–49, 63 S.Ct. 379, 386–87, 87 L.Ed. 443 (1943); *Helvering v. Mitchell*, 303 U.S. 391, 397–98, 58 S.Ct. 630, 632–33, 82 L.Ed. 917 (1938); when the jury is impaneled and sworn, or in a bench trial when the court begins to hear evidence. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). Since none of these events occurred prior to the return of the indictment in this case, we are not concerned with the first two prongs of the Double Jeopardy Clause because defendants are not threatened with a second prosecution for the same offense.

■■■ The only question raised by defendants' motion is whether they were subjected to "punishment" in the civil proceedings within meaning of the third prong of the Clause. We believe the trial court correctly held that the debarment provisions of the settlement agreements were not punitive, but we disagree with the court's conclusion that the $30,000 assessment against John Bizzell was a punishment.[3]

In *Halper*, the Court clarified the applicability of civil remedies to the Double Jeopardy Clause, stating a civil remedy enacted by the government does not rise to the level of proscribed "punishment" unless "in a particular case a civil penalty ... may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment." *Halper*, 109 S.Ct. at 1898. The Court noted:

> the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied

---

**3.** We note the government filed no notice of appeal from this aspect of the district court's ruling, but the government had no basis for doing so. The government's rights of appeal in criminal cases are circumscribed by 18 U.S.C. § 3731, and we find no provision in that section which permits an appeal from the denial of a defendant's motion to dismiss. Moreover, the issue of whether the $30,000 assessment was punitive is inherent in the issue appealed by the defendants.

in the individual case serves the goals of punishment.

. . . .

We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Halper,* 109 S.Ct. at 1901–02.

This case, of course, presents the opposite situation. The civil penalties were exacted before the indictment was returned, but the distinction is not significant. The question is still whether the civil remedies can be fairly described as remedial.

The *Halper* court recognized the answer to that question is not subject to exactitude. Nonetheless, the Court suggested in the "rare case" in which an offender is subjected "to a sanction overwhelmingly disproportionate to the damages he has caused," it may be presumed the sanction is punitive and not remedial. *Halper,* 109 S.Ct. at 1902. This determination is left, in the first instance, to the discretion of the trial court. *Id.*

Guided by these principles, we are in hearty agreement with the district court that the penalty of debarment is strictly remedial. Even defendants concede that debarment was "promulgated to serve a remedial purpose." It is the clear intent of debarment to purge government programs of corrupt influences and to prevent improper dissipation of public funds. Removal of persons whose participation in those programs is detrimental to public purposes is remedial by definition. *See Janik Paving & Const., Inc. v. Brock,* 828 F.2d 84, 91 (2d Cir.1987). While those persons may interpret debarment as punitive, and indeed feel as though they have been punished, debarment constitutes the "rough remedial justice" permissible as a prophylactic governmental action. *Halper,* 109 S.Ct. at 1900.

By contrast, however, we believe the district court abused its discretion by holding the $30,000 payment agreed to by John Bizzell was a "fine" and punitive in nature. The record simply does not suggest that the amount John Bizzell agreed to pay HUD was "overwhelmingly disproportionate to the damages he caused."

We disagree with the district court that the payment had no remedial goals. There were two. First, the payment was intended as an alternative to debarment under the express terms of the settlement agreement.[4] Second, at the time the agreement was executed, the government's losses attributable to John Bizzell far exceeded $30,000. The government's later negotiation of another settlement with a third party which minimized the government's ultimate losses does not negate the remedial intent of the Bizzell settlement.[5] Thus, John Bizzell's agreement to pay HUD $30,000 did not constitute a penalty, and that agreement in no way bars his prosecution under the present indictment.

AFFIRMED IN PART AND REVERSED IN PART.

---

**4.** The agreement provided that John Bizzell would be debarred only if he failed to pay the entire $30,000 within a prescribed time.

**5.** Furthermore, in agreeing that the settlement did not prevent the Justice Department from pursuing criminal sanctions, Mr. Bizzell must have recognized the remedial nature of the payment.