**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Norman K. FURLETT, Defendant–
Appellant.**

No. 91–3772.

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1992.

Decided Sept. 3, 1992.

Edward G. Kohler (argued), Office of the U.S. Atty., Criminal Div., Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for U.S.

James S. Montana, Jr. and Richard G. Agin, Dickinson, Wright, Moon, Van Dusen & Freeman, Chicago, Ill., argued, for Norman K. Furlett.

Before BAUER, Chief Judge, MANION, Circuit Judge, and GIBSON, Senior Circuit Judge.[1]

BAUER, Chief Judge.

On October 11, 1988, the Enforcement Division of the Commodity Futures Trading Commission ("CFTC") issued a complaint against GNP Commodities, Inc. ("GNP"), defendants-appellants Norman K. Furlett and Ira P. Greenspon and two others. The CFTC charged, among other things, that Furlett and Greenspon cheated

---

**1.** The Honorable Floyd R. Gibson, Senior Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

and defrauded customers by illegally allocating profitable commodity futures trades to themselves while giving unprofitable trades to customers at various times from January 1984 to May 1986. All of the charges against the defendants involved violations of the Commodity Exchange Act and its regulations. *See* 7 U.S.C. §§ 6b(A), 6b(C), 6g(1).

After a bifurcated hearing in Chicago, Illinois and Washington, D.C., the CFTC's administrative law judge ("ALJ") entered an opinion on May 25, 1990, which determined that

> [t]he facts set forth in this matter constitute a pernicious, widespread, and institutionalized scheme of cheating and defrauding customers, sustained without abatement or restraint over a period of years. The egregiousness of Greenspon's and Furlett's conduct is amplified by the recondite nature of their activity and the tacit acceptance of the fraud they perpetrated by [their supervisor] and GNP. As such, it is imperative that sanctions be levied against respondents to deter further illegal activity and to protect public customers for the type of insidious conduct described in this case.

*See United States v. Furlett*, 781 F.Supp. 536, 538 (N.D.Ill.1991) (quoting ALJ opinion). With this reasoning, the ALJ ordered the defendants to cease further Commodity Exchange Act violations, revoked their registrations with the CFTC, prohibited them from trading on any contract market, and required that each pay a civil fine of $75,-000. The defendants appealed the ALJ's order to the CFTC. On August 11, 1992, the CFTC affirmed the ALJ's decision.

On April 3, 1991, a federal grand jury returned a twelve-count indictment against Furlett and Greenspon. Each was charged with conspiracy (18 U.S.C. § 371), nine counts of mail fraud (18 U.S.C. § 1341), obstruction of justice (18 U.S.C. § 1505), and subornation of perjury (18 U.S.C. § 1622). These charges involved the defendants' fraudulent commodity trade allocation scheme as well as their obstruction of the CFTC's investigation of their activities.

According to the indictment, Furlett and Greenspon became partners in a commodities brokerage business which was a part of GNP in December 1985. *Id.* at 537. In their role as brokers, they placed orders for the purchase or sale of a commodity without identifying the account for which the transaction was being made. The failure to identify an account number purportedly violated internal GNP rules as well as CFTC and commodities exchange regulations. Allegedly, Furlett and Greenspon would wait to see whether the relevant trade was profitable. If the trade turned out to be profitable, the defendants assigned it either to their own accounts or to accounts in which they held an undisclosed beneficial interest. If the trade resulted in a loss, the defendants assigned it to the accounts of other customers. The indictment also charges that the defendants used several means to conceal their fraudulent scheme and that they obstructed the CFTC's investigation of their trading practices.

In August 1991, Furlett and Greenspon filed a motion to dismiss the indictment, claiming that they already had been punished for these offenses by the ALJ's imposition of the $75,000 fine and trading ban. Given the ALJ's decision, the defendants argued, a criminal prosecution for the same offense violated the Double Jeopardy Clause of the Fifth Amendment. The government objected to the motion, arguing that the administrative sanction is no bar to a criminal prosecution. In support of its opposition to the motion, the government submitted an affidavit that catalogued the hours and other resources spent in investigating and litigating the case. Moreover, the government pointed out that, based on the ALJ's findings, the total customer losses caused by the defendants was approximately $223,000, while the combined net profits to the defendants' accounts exceeded $172,000.

On November 14, 1991, the district court denied the defendants' motion. Analyzing nature of the ALJ's decision with the reasoning of *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and its progeny, the district court

found that the administrative sanctions were remedial rather than punitive. The district court found the fines to be remedial essentially for two reasons: that the fines were a form of disgorgement, and that they were not overwhelmingly disproportionate to the CFTC's costs of investigating and litigating the defendants' activities. The district court wrote:

> [O]ne might reasonably consider the fines as disgorgement, a sanction which the courts have consistently recognized as remedial rather than punitive. Thus, although the fines imposed by the ALJ did not compensate the victims of the defendants' wrongdoing, the fines may be characterized as remedial nonetheless.... [T]he Court [also] finds the [government's] affidavit sufficient to demonstrate that the fines imposed upon Furlett and Greenspon by the ALJ are not so overwhelmingly disproportionate to the CFTC's expenses in investigating and litigating their behavior that the fines must be deemed punitive....

*Furlett,* 781 F.Supp. at 544–46. The district court also found the trading ban to be remedial as applied to Furlett and Greenspon: "[T]he decision to exclude defendants from trading, even through other brokers, reasonably may be interpreted as an action necessary to ensure the integrity of contract markets and protect them from persons whose actions had, in the ALJ's view, demonstrated a lack of conscience." *Id.* at 547.

Both Furlett and Greenspon appealed the district court's denial of their motion to dismiss. On February 3, 1992, Greenspon withdrew his appeal and pleaded guilty to the conspiracy count and one count of mail fraud. Thus, only Furlett pursues this interlocutory appeal.

On appeal, Furlett renews his claim that the instant criminal prosecution violates the Double Jeopardy Clause. Furlett claims that the district court erred in concluding that *Halper* poses no bar to the pending indictment. He argues that the $75,000 fine and the trading bar do not serve solely remedial goals. These sanctions, Furlett maintains, constitute "punish-

ment" for double jeopardy purposes. For these reasons he requests that we reverse the district court's decision and dismiss the indictment. *See* Defendant's Brief at 8.

At the outset, we observe that ordinarily the denial of a defendant's motion to dismiss is not an appealable final decision. Courts of appeal do have jurisdiction, however, to review the denial of a motion to dismiss based on the Double Jeopardy Clause. *Abney v. United States,* 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977). *See also United States v. Patterson,* 782 F.2d 68, 72 n. 7 (7th Cir.1986). Moreover, because Furlett challenges the district court's denial of his motion to dismiss which was grounded on the multiple punishments prohibition of the Double Jeopardy Clause, our review is *de novo. See United States v. Reed,* 937 F.2d 575, 577 n. 4 (11th Cir.1991) ("We review *de novo* the district court's double jeopardy ruling."); *United States v. Benefield,* 874 F.2d 1503, 1505 (11th Cir.1989) ("[A]s a question of law, a district court's double jeopardy ruling is subject to *de novo* review by the appellate court.").

Though we readily admit that the instant appeal is a close case, we ultimately are not persuaded by Furlett's contentions. The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const.Amend. V. As the district court properly noted, there are three scenarios that violate this provision: (1) a second prosecution of an individual for an offense of which he already has been acquitted; (2) a second prosecution of an individual for an offense of which he already has been convicted; and (3) the imposition of multiple punishments for the same offense. *See Furlett,* 781 F.Supp. at 538. *See also Halper,* 490 U.S. at 440, 109 S.Ct. at 1897; *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Because we agree with the district court that the administrative sanctions imposed upon Furlett—namely, the $75,000 fine and a prohibition on any trading—represent remedial, not punitive, measures,

we hold that the Double Jeopardy Clause does not require the dismissal of the pending indictment.

As he did in the district court, Furlett grounds his arguments upon the Supreme Court's recent decision in *Halper*. There the Supreme Court concluded that a sanction imposed in a civil proceeding may constitute the sort of multiple punishment prohibited by the Double Jeopardy Clause. As the district court related, the defendant in *Halper* was a medical laboratory manager who submitted sixty-five false Medicare claims for reimbursement, resulting in a total loss of $585 to the government. *See Furlett*, 781 F.Supp. at 539. When his fraud was discovered, Halper was indicted for violations of the criminal false claims statute, 18 U.S.C. § 287. Upon conviction, he was sentenced to a two-year term of incarceration and fined $5,000. Subsequently, the government filed suit under the civil False Claims Act, 31 U.S.C. § 3729, seeking to recover the statutory penalty of $2,000 for each of his sixty-five false claims ($130,000 in total).

The Supreme Court concluded that the Double Jeopardy Clause forbids the imposition of the civil statutory penalty in light of the criminal penalties previously imposed. The *Halper* Court stated that

> the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particular assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual cases serves the goals of punishment.... We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subject-

ed to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as deterrent or retribution.

*Id.*, 490 U.S. at 448–49, 109 S.Ct. at 1902. The Court stressed that the civil penalty need not correspond precisely to the government's loss to qualify as remedial. Thus, liquidated damages and other forms of "rough justice" may be imposed on top of criminal penalties so long as they bear a reasonable relationship to the government's loss. *Id.* at 449, 109 S.Ct. at 1902.

■ In the instant case, the district court correctly determined that the ALJ's sanctions were remedial in nature. First, the fine imposed on Furlett was not so disproportionate to the "extensive and pernicious fraud in which the ALJ found [Furlett] to have engaged" as to be considered punitive. *Furlett*, 781 F.Supp. at 544. Citing the undisputed affidavit in which the government calculated the CFTC resources spent investigating the defendants' activities, the court found the $75,000 fine proportional to the government's costs. Even Furlett concedes that, under *Halper*, a civil monetary penalty is punitive for double jeopardy purposes, unless it bears a "rational relation" to the expenses the government incurred in investigating and prosecuting the fined individual.[2] *See* Defendant's Brief at 16.

Nevertheless, Furlett offers two challenges to the district court's reliance on the government's affidavit: (1) that the ALJ did not, in fact, consider the government's loss when he imposed the fine; and (2) that the affidavit itself does not approximate the monetary loss sustained by the government attributable to Furlett's alleged misconduct. Neither challenge persuades us. First, that the ALJ did not consider the government's loss when imposing the $75,-

---

**2.** We recognize that *Halper* did not address the situation where the civil sanctions were imposed *before* the criminal prosecution. *Halper* specifically dealt with the reverse scenario. Like the district court and a number of other circuit courts, however, we see no reason for holding that *Halper* should apply only to civil proceedings that post-date criminal ones. *See Furlett*, 781 F.Supp. at 541 (collecting cases). The critical inquiry is whether a proceeding be

deemed punitive for double jeopardy purposes. *See, e.g., United States v. Walker*, 940 F.2d 442, 443 n. 2 (9th Cir.1991) ("[U]nder ... *United States v. Halper*, the Double Jeopardy Clause would prevent the government from prosecuting Walker for possessing and importing the drug if the civil penalty the government imposed [previously] for bringing the drug through customs without declaring it constitutes criminal punishment.").

000 fine does not imply that the fine is not related to the government's loss. In *Halper*, the Supreme Court specifically called for an objective inquiry into what ends the fine reasonably may be said to serve. *Id.* 490 U.S. at 449, 109 S.Ct. at 1902. As Justice Kennedy's concurrence suggests, the determination of the purpose served by the fine "constitutes an objective rule that is grounded in the nature of the sanction and facts of the particular case. [Courts are not] authorize[d] to undertake a broad inquiry into the subjective purposes that may be thought to lie behind a given judicial proceeding." *Id.* at 453, 109 S.Ct. at 1904 (J. Kennedy, concurring).

Second, that the government's affidavit does not specify the exact costs of investigating Furlett's activities, and instead provides only general approximations of the hours spent investigating the entire fraudulent scheme of Furlett, Greenspon, and GNP, does not render the affidavit unreliable. On the contrary, *Halper* makes clear that the trial court's inquiry "will not be an exact pursuit." *Id.* at 449, 109 S.Ct. at 1902. The Supreme Court stated,

> [T]he precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain. Similarly, it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment. In other words, ... the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice.

*Id.* Given this direction, the district court properly relied on the government's rough approximation of its costs to determine that the $75,000 fine was commensurate with the government's losses.

■ Furlett also challenges the district court's conclusion that the trading bar imposed by the ALJ was remedial as well. He contends that prohibiting him from trading on any contract market, even as retail customer using another broker, is punitive for double jeopardy purposes. *See* Defendant's Brief at 20–21. We disagree. As the district court observed, the decision to exclude Furlett from any contract market can be seen as an action to ensure the integrity of the markets and protect them from people like Furlett. Commodities and instruments representing billions of dollars are traded in the nation's contract markets every year. Maintaining a fair and unadulterated open market is a profound and necessary pursuit for our economic well-being. If fraudulent practices undermining the integrity of the markets were to proceed unchecked, the vital efficiency of the market mechanism would be jeopardized.

The ALJ found that Furlett's fraud was "pernicious, widespread, and institutionalized ... sustained without abatement or restraint over a period of years." *Furlett*, 781 F.Supp. at 538. Given the extent of Furlett's violations, the decision to bar him from all further trading activity reasonably can be viewed as a remedial measure commensurate with his wrongdoing. In *United States v. Bizzell*, 921 F.2d 263, 265 (10th Cir.1990), the Tenth Circuit applied similar logic. In *Bizzell*, the defendants claimed that civil sanctions imposed by the Department of Housing and Urban Development ("HUD") were punitive in nature and therefore precluded their criminal prosecution. Specifically, HUD barred the *Bizzell* defendants from participating in HUD programs for approximately two years. Concluding that these sanctions were remedial, the Tenth Circuit declared:

> It is the clear intent of debarment to purge government programs of corrupt influences and to prevent improper dissipation of public funds. Removal of persons whose participation in those programs is detrimental to public purposes is remedial by definition. While those persons may interpret debarment as punitive, and indeed feel as though they have been punished, debarment constitutes the "rough remedial justice" permissible as a prophylactic governmental action [under *Halper*].

*Id.* at 267 (citations omitted).

Although the trading bar in the instant case is more severe than the temporary bar

imposed on the *Bizzell* defendants, it is not out of proportion to Furlett's fraudulent practices. After all, the CFTC is empowered by Congress to enforce the federal commodities law. *See* sections 6(b) and (c) of the Commodity Exchange Act, 7 U.S.C. §§ 9 and 13b. For that purpose, the CFTC is authorized to prohibit violators from trading on any contract market. We hold that Furlett's trading bar is designed to serve remedial purposes. Put simply, we find that Furlett's challenge is not the "rare case" described in *Halper.* 490 U.S. at 449, 109 S.Ct. at 1902. Instead this appeal merely represents legitimate remedial measures obtained prior to a criminal indictment. Double jeopardy, therefore, is not implicated. Furlett's remaining claims also are rejected.

For the foregoing reasons, we AFFIRM the judgment of the district court.