**S.A. HEALY COMPANY, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Robert B. Reich, Secretary of Labor, Respondents.**

Nos. 95–2421, 95–2907.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1996.

Decided Sept. 18, 1996.

Juris Kins (argued), James L. Fox, Abramson & Fox, Chicago, IL, for petitioner.

Steven J. Mandel, Allen H. Feldman, Department of Labor, Appellate Litigation, Washington, DC, Richard J. Fiore, Department of Labor, Chicago, IL, Edward D. Sieger (argued), Thomas S. Williamson, Jr., Department of Labor, Office of Solicitor, Washington, DC, for respondent Robert B. Riech.

Steven J. Mandel, Allen H. Feldman, Department of Labor, Appellate Litigation, Washington, DC, Edward D. Sieger (argued), Ray Darling, Jr., Occupational Safety & Health Review Commission, Washington, DC, for respondent Occupational Safety and Health Review Commission.

Before CUMMINGS, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

On November 10, 1988, three employees died in a methane gas explosion in the Crosstown Seven North Tunnel, a sewage tunnel S.A. Healy Company was building in Milwaukee. The Occupational Safety and Health Administration (OSHA) investigated the explosion and cited Healy for 68 wilful violations of its standards. 29 U.S.C. § 666(a). Forty-nine of the violations related to standards that apply when explosive gas is likely to be present. The Secretary issued the citation under the "egregious" or "instance-by-instance" policy, which penalizes each distinct violation of a standard, instead of assessing one penalty for each standard violated. For example, five violations related to Healy's failure to instruct employees in the recognition and avoidance of unsafe conditions: one violation for each employee that Healy failed to instruct. The Secretary proposed the maximum penalty of $10,000 per violation. Healy contested the citation, so the Secretary filed a complaint with the Occupational Safety and Health Review Commission, and the case was assigned to an administrative law judge for resolution.

The Department of Labor also referred the matter to the Department of Justice for criminal prosecution. The administrative proceeding was stayed meanwhile. Healy was indicted under 29 U.S.C. § 666(e) for wilful violations of OSHA standards that caused the death of an employee. The manager of the tunnel project also was indicted under this section, but those charges were dismissed because the statute applies only to employers. *United States v. Doig*, 950 F.2d 411 (7th Cir.1991). A jury found Healy guilty on all three counts (one for each deceased employee), and the judge assessed a

total fine of $750,000. The criminal conviction established that Healy committed the 49 violations of the standards related to work where explosive gas may be present. Healy did not appeal.

After the completion of the criminal proceedings, the Secretary resumed the administrative proceedings on all 68 violations. Healy and OSHA settled 19 violations, leaving only the 49 that had been the subject of the criminal conviction. The Secretary moved for partial summary judgment, asserting that issue preclusion (collateral estoppel) barred Healy from contesting liability because the criminal conviction established that it committed the 49 violations. Healy did not deny this. Far from it—Healy's reply thanked the Secretary for admitting that the administrative proceeding concerned the same conduct as the criminal conviction, and it argued that the double jeopardy clause prohibits any administrative fines. Healy maintained that fines under OSHA's instance-by-instance policy are punitive and would constitute a second punishment for the same offense. Any second punishment imposed in a separate proceeding would violate the double jeopardy clause of the fifth amendment. See *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

The ALJ ruled that Healy was precluded from contesting liability, rejected its double jeopardy defense, and held a hearing to determine the appropriate fine. The ALJ imposed a fine of $318,500, or $6,500 per violation, after considering the four statutory factors: the employer's size, the gravity of the violations, good faith, and previous violations. See 29 U.S.C. § 666(j). According to the ALJ, the administrative fine was not punishment because it is "rationally related to the Government's costs of investigation and prosecution." On appeal, the Commission agreed, stating that, because the costs of investigating and prosecuting Healy (in the criminal and administrative actions combined) exceeded the maximum fine of $490,000, the double jeopardy clause does not prohibit such a fine. 17 O.S.H. Cas. 1145 (1995). The Commission also concluded that the goal of assuring compliance with OSHA standards is non-punitive, and that fines

serving the end of deterrence are not punishment. *Id.* at 1150–51. Then the Commission remanded the case, because the ALJ had not applied the factor of gravity in determining the fine. On remand, OSHA and Healy agreed that the fine would be $5,100 per violation, for a total of $249,900.

Healy's petition for review of the final order is limited to the question whether the double jeopardy clause prohibits the administrative fine. One potential response would be that the double jeopardy clause is no more applicable to organizations than is the self-incrimination clause. See *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (corporation is not a "person" for purposes of the privilege against self-incrimination); *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (neither is a labor union); *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (or a partnership). The fifth amendment says that no person may "be subject for the same offence to be twice put in jeopardy of life or limb". Corporations cannot be imprisoned, and even dissolution (the closest approximation of a loss of corporate "life") does not diminish the investors' ability to carry on the business; another corporation can be created at minimal cost. Only money is at stake; a fine imposed in a criminal prosecution of a corporation is more like an award of punitive damages than like a criminal conviction of a natural person. Nonetheless, the Secretary does not question *United States v. Hospital Monteflores, Inc.*, 575 F.2d 332 (1st Cir. 1978), which applied the double jeopardy clause to corporations. A footnote to the Secretary's brief "assume[s] for purposes of this appeal that a corporation such as Healy is a 'person' protected by the Double Jeopardy Clause." We take this case as the parties have presented it, without expressing any view on the merits of *Hospital Monteflores*. The Secretary also conceded at oral argument that the administrative and criminal proceedings satisfy the "same elements" approach of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); we accept that concession without exploring the subject independently.

The double jeopardy clause prohibits cumulative punishments imposed in separate proceedings. The United States commenced separate administrative and criminal proceedings. That both were pending at the same time is no matter. *Montana Department of Revenue v. Kurth Ranch*, 511 U.S. 767, —— n. 21, 114 S.Ct. 1937, 1947 n. 21, 128 L.Ed.2d 767 (1994); *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.1994). Although the administrative proceeding began first, jeopardy first attached in the criminal trial when the jury was impaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 32–36, 98 S.Ct. 2156, 2159–61, 57 L.Ed.2d 24 (1978). This makes the administrative hearing the second jeopardy, but only if it sought to impose "punishment." For, as the Supreme Court recently confirmed, not all exactions are punishment for purposes of the double jeopardy clause. *United States v. Ursery*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), holds that *"in rem* civil forfeiture is a remedial civil sanction, distinct from potentially punitive *in personam* civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause." *Id.* at ——, 116 S.Ct. at 2142. Nonetheless, "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Halper*, 490 U.S. at 448–49, 109 S.Ct. at 1902. See also *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

To answer the question whether the OSHA fine is punishment, we must first determine where the Occupational Safety and Health Act (29 U.S.C. §§ 651–78, or "the Act") fits in the Court's conception of punishment. As it read until 1990, § 666(a) provided:

> Any employer who willfully or repeatedly violates ... any standard, rule, ... or regulation[ ] prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation.

(The 1990 amendments are not relevant to the events of 1988, so we disregard them throughout this opinion.) In deciding the amount of the penalty, the Commission "shall ... giv[e] due consideration ... to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations." 29 U.S.C. § 666(j). The amount of the fine depends on the seriousness of the employer's misconduct (both past and present) and the employer's ability to pay. Nothing in the statute allows for consideration of the loss suffered by the government, or the costs of investigation and prosecution. Fines under the OSHA statute are *in personam* civil penalties.

*Halper* concerned the False Claims Act, which provides for civil fines against someone who "knowingly makes ... a false record or statement to get a false or fraudulent claim paid or approved". 31 U.S.C. § 3729(a)(2). The Court stated that "[t]he *remedial* provision of the Act stated that a person in violation is 'liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action.'" *Halper*, 490 U.S. at 438, 109 S.Ct. at 1896 (quoting 31 U.S.C. § 3729; emphasis added). The False Claims Act provides for the consideration of the government's costs of investigation and prosecution in setting the fine. The Court in *Halper* held that "the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole." *Id.* at 451, 109 S.Ct. at 1903 (footnote omitted). Instance-by-instance penalties of $2,000 apiece under the False Claims Act were held in *Halper* to be punishment forbidden by the double jeopardy clause even though the United States was the victim of the fraud in addition to being the prosecutor.

The Occupational Safety and Health Act differs considerably from the False Claims Act, and in ways that make this case less favorable for the United States. For one thing, the penalties are higher. For another, the United States was not a victim of the

explosion, and therefore none of the fine can be justified as a remedy. For a third, the Occupational Safety Act by its terms prohibits the consideration of making the United States whole. Section 666(j) requires that the fine be set based on four specific criteria, none of which concerns the costs of investigation and prosecution. Factors that are considered—employer's size, gravity of the violations, good faith, and the history of violations—evaluate the employer's misconduct and ability to pay. A fine thus derived is not "related to the goal of making the Government whole."

Both the Commission and the Secretary equate "remedial" with the goals of compensation and deterrence. Yet the victims of the explosion and their families get no compensation from the administrative fines. They must look to workers' compensation, wrongful death suits, and employer-funded life insurance. Money destined for the Treasury, which was not injured by the explosion, serves some other function, such as deterrence. That the costs of prosecution happen to exceed Healy's maximum permissible fine does not make the fine remedial. In *Halper* the fines served at least in part as a remedy: the United States was the victim of the false claims and was entitled to be made whole, and the excess contributed to deterrence. Although recovery of the costs of investigating and collecting from Healy may be *compensatory*, in the sense that the United States then breaks even in the business of prosecuting wrongdoers, it cannot be *remedial*, because the United States is not the injured party, and the fine produces no benefit for those who were injured—except through general and specific deterrence, the standard objectives of the criminal law. If we were to treat deterrence (and the costs of achieving it) as "remedial", then the entire criminal apparatus would be remedial, for its penalties can be (and often are) justified without regard to the concept of retribution. If the Secretary's understanding is correct, then there is not much left of the double jeopardy clause. Additional federal agencies furthering their own agendas may conduct their own investigations. The multiplying costs of the investigations become the justification for still more proceedings and the

imposition of additional fines. Healy could be dogged for eternity by additional penalties for the same misconduct. This the double jeopardy clause does not allow.

■ The Secretary relies on *United States v. WRW Corp.*, 986 F.2d 138 (6th Cir.1993), for the proposition that any administrative proceeding designed to enforce a "remedial" statute (as in: "remedial statutes are to be liberally construed", see *Director, OWCP v. Newport News Shipbuilding & Dry Dock Co.*, —— U.S. ——, ——, 115 S.Ct. 1278, 1288, 131 L.Ed.2d 160 (1995)) is free from double jeopardy concerns provided investigation is costly enough. The Federal Mine Safety and Health Act is similar in design and purpose to the Occupational Safety and Health Act. The Mine Safety Act provides for both criminal and administrative sanctions and includes a list of factors for deciding the amount of an administrative fine similar to the list in the Occupational Safety Act. The sixth circuit held that an administrative fine under the Mine Safety Act, following a criminal fine separately assessed, did not violate the double jeopardy clause because the fine did not exceed the costs of investigation and prosecution. In reaching this conclusion the sixth circuit relied primarily on *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), which posed questions such as whether the claim requires a finding of *scienter* or leads to an outcome historically regarded as punishment; the court treated *Halper* as an insignificant blip. *Ursery* shows that *Halper* displaced older approaches and is now the point of reference for the inferior courts. We think that the sixth circuit's understanding is inconsistent with *Ursery*. The Secretary also relies on *United States v. Furlett*, 974 F.2d 839 (7th Cir.1992). But Furlett "concede[d] that a civil monetary penalty is [not] punitive ... [if] it bears a 'rational relation' to the expenses the government incurred in investigating and prosecuting the fined individual." *Id.* at 843. Healy contests the point *Furlett* conceded, and now that the issue is squarely presented we hold that under *Halper* a fine can be punishment even though it is less than the costs of investigation and prosecution. We respectfully decline to follow *United*

*States v. Hudson,* 92 F.3d 1026 (10th Cir. 1996), to the extent it holds that a fine that does not exceed the costs of investigation and prosecution cannot be "punishment".*

Likewise we reject the Secretary's argument that the Act, as a "remedial" statute designed to promote safety, falls outside the compass of *Halper.* The overarching remedial purpose of the Act, the argument goes, means that any fine likewise is remedial and must be treated as non-punitive. This is not consistent with *Halper's* reading of the double jeopardy clause. The issue under *Halper* is not whether the statute is designed to serve a remedial or otherwise beneficent purpose, but whether it achieves this end by the imposition of punitive sanctions.

The Secretary's argument would lead, if accepted, to the conclusion that Healy has not suffered a first jeopardy, much less a second. Healy was fined under § 666(e), the criminal analog to § 666(j). If the "labels 'criminal' and 'civil' are not of paramount importance", *Halper,* 490 U.S. at 447, 109 S.Ct. at 1901, and only the goal (here, safety) matters, then Healy's criminal fine was not punishment. Under the Secretary's view, the United States could bring another proceeding under § 666(e) to recover its costs of investigation and prosecution. Criminal sanctions are used to enforce countless regulatory statutes that can be characterized as "remedial"—anything from regulation of the environment to generic drugs. That the statutes may promote health and safety does not prevent a sanction for violating the statute from being punishment.

Sanctions under the Act could serve a goal other than reimbursing the costs of prosecution and yet not be punishment. Courts have understood *Halper* to allow debarment sanctions following criminal convictions for the purposes of protecting the banking system and financial markets. Debarment, although costly from the wrongdoer's perspective, is a form of incapacitation that protects the public from future harm. *Furlett,* 974 F.2d at 844. Cf. *Kun Chae Bae v. Shalala,*

44 F.3d 489 (7th Cir.1995) (debarment under the Generic Drug Enforcement Act is not punishment for purposes of the *ex post facto* clause). But this understanding does not help the Secretary today. Healy was not debarred from digging tunnels; the fines do not incapacitate anyone but instead create general and specific deterrence. That *means* is punitive, even though the *end* is a safer workplace.

▌ Healy was penalized under the "instance-by-instance" policy, which the Secretary reserves for wilful and flagrant violations that produce severe injuries. *Caterpillar, Inc.,* 15 O.S.H. Cas. 2153 (1993) (discussing background of instance-by-instance penalties). "The Secretary's own directives acknowledge that the purpose of the instance-by-instance penalty is *to provide a deterrent effect on employers in general.*" 17 O.S.H. Cas. at 1152. A penalty designed to deter wrongdoing is punishment. Healy was fined 43 times for failure to use approved electrical equipment. This included 13 exactions for light fixtures, all identical except for location. "[T]he particularity with which the Secretary chooses to separate out such instances within an ... occurrence solely for the purpose of increasing the size of the penalty, and the extent to which he has done so here, underscores the punitive potential of [instance-by-instance] penalties". 17 O.S.H. Cas. at 1154. That punitive potential has been realized. Imposed in a single proceeding, the criminal and administrative fines would not have been problematic, for the double jeopardy clause allows multiple punishments if there is only one "jeopardy." *Ohio v. Johnson,* 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984); *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 343–44, 101 S.Ct. 1137, 1144–45, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 693, 100 S.Ct. 1432, 1438–39, 63 L.Ed.2d 715 (1980). But

---

* Because this opinion creates a conflict among the circuits, it was circulated before release to all judges in active service. See Circuit Rule 40(e). A majority did not favor a hearing en banc.

Circuit Judges Flaum, Ripple and Rovner voted to hear the case en banc. Circuit Judge Evans did not participate in the consideration or decision of this case.

Healy has been through two proceedings, each imposing punishment, and thus two jeopardies. The petitions for review are granted, and the order of the Commission is set aside.