**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-40884

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BENNY L. RUSK,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

September 23, 1996

Before HIGGINBOTHAM, WIENER, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

I.  FACTS AND PROCEEDINGS BELOW

From 1952 to 1989, Benny Rusk worked at First State Bank of Liberty, Texas.  By 1988, Rusk had become president of the bank.  In addition, Rusk owned a majority of the bank's stock and was one of its directors.

On October 14, 1988, the FDIC conducted an examination of the bank.  Bank examiners discovered numerous violations of banking regulations.  John Schmalzer, the examiner-in-charge, reported that

loans ostensibly made to other individuals were actually for Rusk's benefit. In addition, Rusk allegedly received $214,000 that had been expensed by the bank as legal and professional fees and $175,000 from the bank's credit life rebate account. In December 1988, Schmalzer recommended to the FDIC Regional Director that Rusk be suspended from participating in the bank's affairs and be ordered to cease and desist from using bank funds to service his own personal loans.

The FDIC subsequently determined to initiate debarment proceedings against Rusk pursuant to 12 U.S.C. § 1818(e). The FDIC informed the bank of its intent and, on April 27, 1989, served Rusk with the Notice of Intention to Remove from Office and to Prohibit from Participation. Prior to the filing of the Notice, Rusk returned $389,769 to the bank as restitution for his misappropriation of the bank's funds from the account for legal and professional fees and from the credit life rebate account.

On July 27, 1989, Rusk entered into a Stipulation and Consent to an Issuance of an Order of Removal. Pursuant to the Stipulation, Rusk consented to the entry of an order prohibiting him from participating in the bank's affairs and, further, from participating in the affairs of any bank insured by the FDIC without the FDIC's prior written consent. On January 26, 1990, the FDIC issued an order to that effect.

On March 11, 1992, Rusk was charged in a ten-count indictment arising from the foregoing activities. The indictment charges Rusk with conspiracy to make false entries; four counts of false

2

entries; three counts of misapplication of bank funds; and two counts of false statements to the IRS. Rusk moved to dismiss the indictment, alleging that the prior administrative proceedings constitute punishment for purposes of double jeopardy and therefore bar the instant criminal prosecution. The district court denied the motion. Rusk now appeals that denial. The district court stayed the criminal proceedings pending this appeal.

## II. ANALYSIS

Rusk argues that the criminal indictment constitutes multiple punishment for the same offense adjudicated in the earlier FDIC administrative proceedings. Relying on <u>United States v. Halper</u>, 490 U.S. 435 (1989), Rusk contends that the sanctions imposed by the FDIC were not solely remedial and, therefore, qualify as punishment under Supreme Court precedent. Rusk points to three sanctions allegedly imposed by the FDIC: (1) the $389,769 restitution payment; (2) the debarment order; and (3) the drop in the value of Rusk's bank stock allegedly caused by the debarment order.

The restitution payment does not constitute punishment because it is purely remedial. The restitution payment corresponds exactly to the amount Rusk embezzled from the bank's accounts. Stated another way, the payment simply returns to the bank what he stole from it; it does not serve a punitive purpose.

This circuit has yet to address whether a debarment order issued in an administrative proceeding constitutes punishment for

3

purposes of double jeopardy.  Other circuits that have addressed the issue in related contexts have <u>uniformly</u> held that such orders do not constitute punishment.  <u>See</u> <u>DiCola v. Food & Drug Admin.</u>, 77 F.3d 504, 507 (D.C. Cir. 1996) (holding debarment under 21 U.S.C. § 335a(a) did not constitute punishment for purposes of double jeopardy); <u>Bae v. Shalala</u>, 44 F.3d 489, 496 (7th Cir. 1995) (same); <u>United States v. Furlett</u>, 974 F.2d 839, 844 (7th Cir. 1992) (holding CFTC debarment did not constitute punishment); <u>United States v. Bizzell</u>, 921 F.2d 263, 267 (10th Cir. 1990) (holding 3-year HUD debarment did not constitute punishment).  Furthermore, those circuits to consider debarment orders issued under the same statutory authority as here, 12 U.S.C. § 1818, have held those orders do not constitute punishment.  <u>United States v. Stoller</u>, 78 F.3d 710, 724 (1st Cir. 1996); <u>United States v. Hudson</u>, 14 F.3d 536, 542 (10th Cir. 1994).

As those courts have explained, debarment orders do not serve a punitive purpose but rather the remedial goal of protecting the banking industry:

> [T]he OCC's use of debarment as a means of protecting the integrity of the banking system and the interests of the depositors is a legitimate remedial purpose that need not necessarily be defined as also serving as deterrence or retribution.

<u>Hudson</u>, 14 F.3d at 541-42.  Similarly, after examining § 1818's text and legislative history, as well as the particular nature of the debarment there at issue, Judge Selya concluded that "the root purpose of debarment . . . [is] to purge sensitive industries of corruption and thereby protect the public.  This purpose, evident

4

here, is essentially remedial in nature." Stoller, 78 F.3d at 724. We agree that the debarment order was remedial, not punitive.

Finally, Rusk contends that the loss in stock value was attributable to the FDIC's debarment order and, therefore, constitutes punishment by the FDIC. This argument is without merit.

Even accepting that the loss in stock value was attributable to the FDIC debarment order--itself a debatable proposition--the loss of stock is a collateral consequence of the debarment order. The FDIC order did not mandate that Rusk forfeit his stock or that the stock go down in value. Rather, the loss in stock value was the market's reaction to Rusk's departure from the bank. Rusk cites no authority that a collateral consequence of a sanction is part of the sanction itself.

In short, the FDIC's sanctions did not punish Rusk but rather served remedial purposes. Consequently, the criminal prosecution does not constitute an attempt to impose multiple punishments for the same offense.

The district court's denial of Rusk's motion is therefore AFFIRMED.