**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bruce Randolph BORJESSON,
Defendant–Appellant.**

No. 95–36140.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 5, 1996.*

Decided Aug. 13, 1996.

James A. Gasper, Jermain, Dunnagan & Owens, Anchorage, Alaska, for defendant-appellant.

Kenneth S. Roosa, Assistant United States Attorney, Anchorage, Alaska, for plaintiff-appellee.

———

* The panel unanimously finds this case suitable for decision without oral argument. Accordingly, the case will be submitted on the briefs and record. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Before: GOODWIN, BRUNETTI and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge.

We are called on to decide if debarment from participation in government programs is punishment for purposes of the double jeopardy clause.

Randy Borjesson preyed on innocent homeowners. He offered to assume their HUD– or VA-insured mortgages; in exchange, they paid him rent. Borjesson spent the rent money but didn't make the mortgage payments, causing 33 defaults. After his crimes were discovered, he tried to evade the authorities—first by fleeing, then by changing his appearance.

Borjesson was eventually convicted of equity skimming and mail fraud. 12 U.S.C. § 1709–2; 18 U.S.C. § 1341. While awaiting sentencing, he was indefinitely excluded from participation in HUD programs, pursuant to a regulation that permits debarment "for a period commensurate with the seriousness of the cause(s)." 24 C.F.R. § 24.320(a). He was later sentenced to 38 months in prison.[1]

■ Borjesson claims that debarment qualifies as punishment for double jeopardy purposes and that his subsequent criminal sentence therefore should be set aside. In arguing that the HUD sanctions were punitive, he points to the indefinite term of the debarment, HUD's one-sided proceedings and the speed with which HUD acted—proof, he says, of punitive intent.

We reject Borjesson's claim that his debarment is punitive. In doing so, we join the Tenth Circuit, which held that

[i]t is the clear intent of [HUD] debarment to purge government programs of corrupt

influences and to prevent improper dissipation of public funds. Removal of persons whose participation in those programs is detrimental to public purposes is remedial by definition.

*United States v. Bizzell,* 921 F.2d 263, 267 (10th Cir.1990). Every other circuit to consider the issue has reached the same conclusion. *United States v. Stoller,* 78 F.3d 710, 724 (1st Cir.1996) (indefinite debarment from banking industry); *DiCola v. FDA,* 77 F.3d 504, 507 (D.C.Cir.1996) (permanent exclusion from providing services to pharmaceutical industry); *Bae v. Shalala,* 44 F.3d 489, 497 (7th Cir.1995) (permanent debarment under Generic Drug Enforcement Act); *United States v. Hartley,* 612 F.2d 1009, 1010 (5th Cir.1980) (temporary suspension from contracting with Department of Defense).

These decisions are consistent with the Supreme Court's recent holding that civil forfeiture does not constitute punishment under the double jeopardy clause. *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). In reaching this conclusion, the Court considered both the stated purposes of the forfeiture statutes and their practical effects. *Id.* at ——, 116 S.Ct. at 2142. It found "[m]ost significant" that the provisions, "while perhaps having certain punitive aspects, serve important nonpunitive goals." *Id.* at ——, 116 S.Ct. at 2148.

■ *Ursery* provides a framework for determining when double jeopardy concerns arise. First, HUD debarment was intended to be remedial. *See* 24 C.F.R. § 24.115(b) ("Debarment and suspension are serious actions which shall be used only in the public interest and for the Federal Government's protection *and not for purposes of punishment.*") (emphasis added). Second, debarment serves "important nonpunitive goals"— maintaining the integrity and the appearance of integrity of government programs.[2] That

---

1. Because we hold that debarment does not constitute punishment for double jeopardy purposes, Borjesson's claim would fail even if his prison term had been imposed before debarment, or even if we believed that, under a determinate sentencing scheme, his prison term was a foregone conclusion when the jury returned a guilty verdict.

2. These non-punitive goals are comparable to the purposes of forfeiture enumerated by *Ursery. See* —— U.S. at ——, 116 S.Ct. at 2148 ("forfeiture prevents further illicit use of property" and "prevent[s] forbidden merchandise from circulating in the United States" (citations, quotation marks and brackets omitted)).

these goals may resemble the legitimate objectives of punishment—including deterrence and incapacitation—is inevitable, and does not change the essentially remedial character of debarment. Nor does Borjesson's characterization of his predicament matter. "[W]hether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the 'sting of punishment.'" *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, —— n. 14, 114 S.Ct. 1937, 1945 n. 14, 128 L.Ed.2d 767 (1994) (quoting *United States v. Halper*, 490 U.S. 435, 447 n. 7, 109 S.Ct. 1892, 1901 n. 7, 104 L.Ed.2d 487 (1989)).

Borjesson would have us find that even if debarment is *generally* remedial, here it was applied in a punitive fashion. In effect, he is asking us to adapt the case-specific approach of *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), to debarment.

Halper violated the False Claims Act to the tune of $585 and was assessed a statutory penalty of $130,000. The Court held that where an offender is subject "to a sanction overwhelmingly disproportionate to the damages he has caused," the sanction is presumed to be punitive and not remedial. 490 U.S. at 449, 109 S.Ct. at 1902. It left "to the trial court the discretion to determine ... the size of the civil sanction the Government may receive without crossing the line between remedy and punishment." *Id.* at 450, 109 S.Ct. at 1902. This approach—requiring a case-by-case comparison of damages caused to penalty imposed—was confined to "the rare case ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a[n] ... overwhelmingly disproportionate [sanction]." *Id.* at 449, 109 S.Ct. at 1902; *see id.* at 453, 109 S.Ct. at 1904 (Kennedy, J., concurring) ("[*Halper*] does not authorize courts to undertake a broad inquiry into the subjective purposes that may be thought to lie behind a given judicial proceeding.").

The Court has thus declined to apply *Halper*'s "balancing test" outside the fixed-penalty context. Most recently, in *Ursery*, it found *Halper*'s calculus inapplicable because it is "virtually impossible to quantify, even approximately, the non-punitive purposes served by a particular civil forfeiture." *Ursery*, —— U.S. at ——, 116 S.Ct. at 2145. In the case of debarment, a non-monetary sanction, quantification is out of the question. *Ursery*, not *Halper*, must guide us.[3]

 We conclude that the remedial sanction of debarment does not implicate a constitutional right applicable to punishment alone.

AFFIRMED.

---

3. Having determined *categorically* that debarment is not punishment, we note that such a rule makes sense even in what Borjesson claims is an extreme case.

First, Borjesson makes much of the indefinite term of his debarment. However, even permanent debarment has been found to be remedial if it protects government programs from corruption. *See, e.g., DiCola*, 77 F.3d at 507 ("The permanence of the [FDA] debarment can be understood, *without reference to punitive intent*, as reflecting a ... judgment that the integrity of the drug industry, and with it public confidence in that industry, will suffer if those who manufacture drugs use the services of someone who has committed a felony subversive of FDA regulation." (emphasis added)); *Bae*, 44 F.3d at 495 ("[T]he duration or severity of an employment restriction will not mark it as punishment where it is intended to further a legitimate governmental purpose.").

Next, Borjesson claims, portentously, that he "has never been informed that his indefinite debarment could be vacated." Appellant's Reply Br. at 4. In fact, the HUD debarment provision cited by Borjesson states: "The respondent may request the debarring official to reverse the debarment decision or to reduce the period or scope of debarment ... [for any] reasons the debarring official deems appropriate.... In no event may more than one such request be submitted within any 12–month period." 24 C.F.R. § 24.320(c)(5), (d). Thus Borjesson may seek to have his debarment lifted. That he may be reinstated if he convinces HUD he no longer poses a threat to the integrity of its programs underscores the remedial nature of the sanction. *Indefinite* debarment exists to purge government programs of corrupt influences only so long as those influences exist.

Finally, Borjesson argues that "HUD's Rush to Impose Debarment Reveals the Punitive Intent Behind [the Agency's] Decision." Appellant's Opening Br. at 19. According to Borjesson, because he was incarcerated, he was unable to respond to HUD's notices before the debarment took effect. HUD's procedures for seeking reinstatement, *see* 24 C.F.R. § 24.320(c), should give Borjesson ample opportunity to be heard.