**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4286

FRED L. HATFIELD, SR., d/b/a HVAC
Construction Company,
Incorporated,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia,
Matthew J. Perry, Jr., Senior District Judge.
(CR-95-758)

Argued: October 31, 1996

Decided: March 7, 1997

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
HARVEY, Senior United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Murnaghan and Senior Judge Harvey
joined.

_____

**COUNSEL**

**ARGUED:** John Dennis Delgado, Columbia, South Carolina, for
Appellant. Eric William Ruschky, Assistant United States Attorney,

Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Columbia, South Carolina, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

This case presents the question of whether a debarred government contractor may be prosecuted criminally for the same fraudulent conduct that led to the debarment. The defendant, arguing that his debarment constituted punishment, asserts that the Double Jeopardy Clause of the Fifth Amendment bars his subsequent criminal prosecution. Because we conclude that debarment is civil and remedial, we reject the argument and affirm the district court's order refusing to dismiss his indictment.

In a twelve-count indictment, the government charges that over a period of several years beginning in September 1990, Fred L. Hatfield, Sr., doing business as HVAC Construction Company, made false and fraudulent statements to the government. The indictment charges that on several occasions when bidding for government work, Hatfield fraudulently misrepresented that he had never had a government contract terminated for default. It also charges that in performing government contracts, Hatfield had on various occasions made certifications for payment that fraudulently stated that work had been performed and that payments had been made to his subcontractors. The government further charges that on one occasion Hatfield presented a false subcontractor invoice.*

This conduct alleged in the government's indictment was also the basis for Hatfield's earlier debarment from government contracting. In July 1994, the Department of the Army debarred Hatfield and his companies from all government contracting for a period of 26

_____

*The indictment also charges that Hatfield filed a false document in a bankruptcy proceeding and fraudulently concealed assets, but this conduct did not form a basis for Hatfield's debarment from government contracting.

2

months. That debarment, Hatfield claims, cost Hatfield and his company $1,147,227 in attorneys fees, lost profits, and out-of-pocket expenses. He attributes the majority of that assessment to lost profits and his own unpaid compensation.

Hatfield filed a motion to dismiss the indictment, arguing that under United States v. Halper, 490 U.S. 435 (1989), his debarment constituted punishment because it caused him far more loss than the loss sustained by the government. Accordingly, he argued, his current prosecution would result in a second punishment in violation of the Double Jeopardy Clause. From the district court's order denying Hatfield's motion to dismiss the indictment, this interlocutory appeal followed.

The Double Jeopardy Clause, which provides, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const. amend. V, prohibits not only successive criminal prosecutions but also successive punishments for the same offense. Thus, if the government's debarment of Hatfield and his companies constituted punishment for double jeopardy purposes, he is entitled to have his subsequent criminal prosecution dismissed. As Hatfield argues, it does not matter whether the debarment preceded or succeeded the criminal prosecution. If both are punishment, the second proceeding is barred. See United States v. Reed, 937 F.2d 575, 576 n.3 (11th Cir. 1991); United States v. Bizzell, 921 F.2d 263, 267 (10th Cir. 1990). If, on the other hand, debarment is a civil proceeding, it does not implicate the Double Jeopardy Clause because that clause prohibits "two criminal trials [or] two criminal punishments." One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 235 (1972). To determine whether debarment is civil or criminal, we look to (1) whether the procedure was designed to be remedial, and (2) whether the remedy provided, even if designated as civil, "is so unreasonable or excessive that it transforms what was clearly intended as a civil remedy into a criminal penalty." Id. at 237; see also United States v. Ursery, 116 S. Ct. 2135, 2147 (1996); United States v. One Assortment of 89 Firearms, 465 U.S. 354, 362 (1984).

Debarment is the action taken against a contractor to exclude it from government contracting for a specified period. See 48 C.F.R. § 9.403. The action is an agency proceeding which is "as informal as

3

is practicable, consistent with the principles of fundamental fairness." 48 C.F.R. § 9.406-3(b)(1). The cause for debarment, if not based on a conviction or judgment, must be established by "a preponderance of the evidence." 48 C.F.R. § 9.406-3(d)(3). Finally, debarment cannot be imposed to punish but only to serve the remedial goal of protecting the government. See 48 C.F.R. § 9.402(b).

There can be little doubt that debarment was designed to be a civil proceeding. By its own procedural rules, it may not be imposed for punishment, but only to protect the government in its dealings with contractors. See id. Moreover, its procedures are informal and the proof demanded is by a preponderance of the evidence. See 48 C.F.R. § 9.406-3(b)(1), (d)(3). Finally, the remedial purpose is linked to specific conduct that relates to the protection of the government from fraud, neglect, nonperformance, or other conduct lacking integrity, with a focus on the "present responsibility" of the contractor. 48 C.F.R. § 9.406-2; see also United States v. Bizzell, 921 F.2d 263, 267 (10th Cir. 1990) ("debarment constitutes the rough remedial justice permissible as a prophylactic governmental action" (internal quotation marks omitted)); cf. Ursery, 116 S. Ct. at 2148 (even though in rem civil forfeiture has "certain punitive aspects," it is designed to serve important nonpunitive goals and is, therefore, a remedial sanction).

We also believe that debarment for 26 months is not so "unreasonable or excessive" as to transform what is designed as a civil remedy into a criminal penalty. Hatfield is accused of fraudulently misrepresenting material facts on numerous occasions over a span of years, and of overstating a subcontractor's billing by more than $10,000. These facts raise a serious question about his "present responsibility" as an honest and dependable contractor to the government. In United States v. Glymph, 96 F.3d 722 (4th Cir. 1996), where the facts are strikingly similar -- Glymph was debarred for knowingly supplying the government with parts that did not conform to purchase order specifications -- we rejected the argument that a four-year debarment was "overwhelmingly disproportionate" where the government paid more than $40,000 for nonconforming parts. See id. at 725-26. We so held even though the regulations provide that generally debarment should not exceed three years. See 48 C.F.R. § 9.406-4; see also Glymph, 96 F.3d at 725 n.*. We believe the holding of Glymph controls the disposition of this case. The government estimates that Hat-

4

field caused direct losses between $40,000 and $60,000, which does not take into account victims and losses sustained by subcontractors and suppliers whom Hatfield did not pay. In these circumstances, the 26-month debarment was not so unreasonable or excessive as to transform the remedial sanctions into a criminal penalty.

Hatfield argues that notwithstanding our holding in Glymph, the Supreme Court's holding in United States v. Halper, 490 U.S. 435 (1989), requires a "particularized assessment" to determine whether the debarment in this case is punitive. He maintains that such an assessment would disclose that his losses sustained from the debarment were excessively disproportionate to the harm caused to the government.

In Halper, the contractor was assessed a civil penalty of $130,000, which was 220 times greater than the government's $585 in damages. The Supreme Court held that while the civil penalty did not rise to the level of punishment solely because Congress provided for a remedy in excess of the government's actual damages, its precedent did not "foreclose the possibility that in a particular case a civil penalty . . . may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment." 490 U.S. at 442. The Court held in the particular circumstances that Halper's $130,000 liability was sufficiently disproportionate as to constitute punishment. See id. at 452.

We do not believe that the Halper decision applies to a case of the type before us. In Ursery, the Supreme Court noted that the Halper balancing test -- weighing the government's harm against the penalty's size -- was appropriate only where the penalty was for a "fixed monetary" amount. 116 S. Ct. at 2145. Consequently, the Court noted that when confronted with the in rem forfeiture sanction where the "nonpunitive purposes served" were "virtually impossible to quantify," the Halper test is "inapplicable." Id. Indeed, though we had no need to decide the issue in Glymph, our opinion indicated that the applicability of Halper to debarment was doubtful. See Glymph, 96 F.3d at 725-26 (citing United States v. Borjesson, 92 F.3d 954, 956 (9th Cir. 1996)).

For the same reasons given in Ursery, we believe that debarment here is not subject to the same type of "particularized assessment"

5

which Halper requires for fixed-amount penalties. That is, the government does not seek the return of a particular quantity of funds but instead seeks to protect the quality of its acquisition programs. Of course, the debarred contractor may quantify its losses in terms of potential profits, and the government may even be able to attach a number to much of the reason for debarment. For instance, we identified a $40,000 loss in nonconforming parts in Glymph. See 96 F.3d at 726. But the government may also debar a contractor for non-monetary causes such as those affecting the responsibility of a contractor or for disreputable business practices. See 48 C.F.R. § 9.406-2(a)(5), (c). Where the sanction and the purposes it seeks to achieve are qualitative rather than merely quantitative, the Halper inquiry is inapplicable. Instead, the question becomes the one raised in Ursery -- whether the debarment is in effect so unreasonable and excessive, i.e. so punitive, that we must, from the "clearest proof" conclude that the proceeding is not civil but criminal in nature. See Ursery, 116 S. Ct. at 2148-49.

In the case before us, Hatfield has not carried the burden of demonstrating with clearest proof that his 26-month debarment is disproportionate to the benefits received by the government in protecting it against the effects of willful failures to perform in accordance with the terms of government contracts, the effects of a history of failures to perform, and the adverse effect of having the government contract with an irresponsible contractor. See 48 C.F.R. § 9.406-2(b)(1), (c); § 9.402(b); see also Glymph, 96 F.3d at 725-26. Indeed, we doubt that any debarment within the three-year guideline established in the regulations, see 48 C.F.R. § 9.406-4, could present a case sufficiently punitive to implicate the Double Jeopardy Clause. Cf. Glymph, 96 F.3d at 725 n.* (holding a four-year debarment not to be of constitutional significance).

Accordingly, we affirm the district court's order denying Hatfield's motion to dismiss the indictment in this case. The case is remanded for further proceedings.

AFFIRMED AND REMANDED

6