UNITED STATES of America,
Plaintiff–Appellee,

v.

James A. MERRIAM, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Harold B. HAYES, Defendant–Appellant.

Nos. 96–10052, 96–10059.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1996.

Decided March 12, 1997.

Alvin H. Goldstein, Jr. and Kelly J. Snowden, Goldstein & Phillips, San Francisco, CA, for defendant-appellant Merriam; Larry Kupers, and Mary McNamara, Assistant Federal Public Defenders, San Francisco, CA, for defendant-appellant Hayes.

Sandra Stern, Wayne T. Lamprey, Assistant United States Attorneys, San Francisco, CA, for plaintiffs-appellees.

Before: REINHARDT and RYMER, Circuit Judges; TANNER,* District Judge.

TANNER, District Judge:

James A. Merriam and Harold B. Hayes appeal the denial of their motion to dismiss an indictment charging them with conspiracy to commit and commission of wire fraud and securities fraud. They claim that lifetime bar orders previously issued against them by the SEC equated to punishment and thus precluded their subsequent indictment under the Double Jeopardy Clause. We have jurisdiction over this interlocutory appeal under the collateral order exception to the final judgment rule. *United States v. Chick,* 61 F.3d 682, 686 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1416, 134 L.Ed.2d 542 (1996).

## I. The civil actions

### A. Merriam.

On March 7, 1994 the SEC filed a civil complaint against Merriam and The Vintage Group, Inc. ("Vintage") involving the allegations later filed in the criminal case plus others. The complaint alleged violations of, *inter alia,* 15 U.S.C. §§ 77e(a) and (c), 77q(a), 78j(b), 80a–35(a), and 78m(a) as well as 17 C.F.R. §§ 240.10b–5, .12b–20, .13a–1 and .13a–13.

On October 20, 1994 a consent judgment was filed and signed by the district court. In that judgment, Merriam consented to the lifetime bar that is the basis for his double jeopardy claim. The consent judgment provides that Merriam is permanently barred from acting or serving as an officer or director of any issuer either having a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]....

### B. Hayes.

On March 6, 1992, the National Association of Securities Dealers ("NASD") through its Market Surveillance Committee ("MSC") initiated disciplinary proceedings against Hayes and others relating to the sale of Vintage stock. After an evidentiary hearing the MSC concluded that Hayes violated Section 10(b) of the Securities Exchange Act of 1934, Rule 10(b)5 Sections 1 and 18 of the Association's Rules of Fair Practice, Article III Section 1 and 28 of the Association's Rules of Fair Practice, Regulations T and X of the Federal Reserve System, and Regulation E of the Securities Act of 1933. Hayes was censured, fined $300,000 and "barred from association with any member in any capacity." He appealed the MSC decision to the NASD National Business Conduct Committee, who affirmed the decision. He then sought review by the SEC who sustained the NASD's disciplinary action on September 13, 1994.

## II. The criminal charge

On July 26, 1995 Merriam, Hayes and one other person were charged in a 34 count Superseding Indictment with violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1343 (wire fraud) and 15 U.S.C. §§ 78j and 78ff (securities fraud). The indictment charged that Merriam, Hayes, and one other person manipulated the price of stock in Vintage, a venture capital company owned by Merriam, by engaging in a "free-riding" scheme whereby Merriam, Hayes, and one other person would buy and sell their stock in cooperation with each other and sell it to third parties based upon false and inflated financial data without disclosing that Hayes and the other named individual were "fronted" stock which they subsequently paid back at the original low price after turning a profit at the later inflated price.

Both Merriam and Hayes filed motions to dismiss for violation of the Double Jeopardy Clause. The district court denied the motions ruling that the lifetime bar orders do not equate to punishment.

## III. Discussion

■ We review a district court's denial of a motion to dismiss based on double jeopardy grounds *de novo. Chick,* 61 F.3d at 686.

---

* The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

In *United States v. Borjesson,* 92 F.3d 954, 955–56 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 622, 136 L.Ed.2d 545 (1996), we held that a HUD debarment order issued after conviction but prior to sentencing did not violate the Double Jeopardy Clause. In so doing we held that the analysis is guided by *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) and not by *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). "In the case of debarment, a non-monetary sanction, quantification is out of the question. *Ursery,* not *Halper* must guide us." [1]

Both Merriam and Hayes attempt to distinguish *Borjesson.* They argue that the HUD statute involved specifically indicated that a HUD debarment was "not for purposes of punishment." 24 C.F.R. § 24.115(b). They argue that the SEC statutes involved do not contain this specific a directive, and, therefore the analysis leads one to the conclusion that they are for deterrent and retributive purposes and are thus punitive. We disagree.

 *Ursery* sets forth a two part test to determine whether or not the Double Jeopardy Clause is implicated. First, the court asks whether Congress intended the proceedings to be civil or criminal, and, second, the court "consider[s] whether the proceedings are so punitive in fact" to negate Congress' intent. —— U.S. at ——, 116 S.Ct. at 2147. As to the first part of the test, Congress' intent can be found in the legislative history of the statute which provides for the bar. The bar was put in by Pub.L.No. 101–429, 104 Stat. 931 (1990) which amended various sections of the securities laws. The Senate report indicates that the purpose of Pub.L.No. 101–429 was to "provide the agen-cy with a broader range of remedies to protect investors and maintain the integrity of the nation's security markets." S.Rep. No. 101–337, (1990). The House report concurs. *See* H.R.Rep. No. 101–616 (1990).

The preamble to the Maloney Act, which allows the NASD to discipline its members, provides that it was enacted "to prevent acts and practices inconsistent with just and equitable principles of trade, and for other purposes." Pub.L.No. 719, ch. 677, 52 Stat. 1070 (1938). The "procedural mechanisms", *see, Ursery,* —— U.S. at ——, 116 S.Ct. at 2147, the act sets forth do not provide for the rights to which a criminal defendant is entitled, i.e. "confrontation, compulsory process for obtaining witnesses, trial by jury, and assistance of counsel." *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 164, 83 S.Ct. 554, 565, 9 L.Ed.2d 644 (1963). Thus, Congress intended that such sanctions be remedial in nature and not punitive.

The second part of the test requires the "clearest proof" that the sanctions at issue "are so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148. As to Merriam, the consent decree he entered into specifically refers to 17 C.F.R. § 202.5(f) [2] and states that it was "for the purpose of resolving this civil proceeding only . . . and does not resolve, affect or preclude any other proceeding which may be brought against him."

As to Hayes, the NASD decision indicates that the bar was imposed "to protect the investing public against this form of manipulative activity by those in the securities industry who have a fiduciary obligation to their customers." The SEC concurred.

---

**1.** We therefore reject appellant's argument that *Halper* controls.

**2.** 17 C.F.R. § 202.5(f) provides in pertinent part: It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

Therefore, under the two part *Ursery* test, these lifetime bars are remedial and do not constitute punishment because Congress intended them to be civil in nature and nothing about them is so punitive as to negate Congress' intent.[3]

The district court's order is AFFIRMED.

**3.** Both Merriam and Hayes argue that the lifetime bars is a punishment because it bars them from earning a gainful living in their chosen profession. However, the *Borjesson* court, in rejecting a similar plea, noted that "[n]or does [appellant's] characterization of his predicament matter. '[w]hether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the "sting of punishment." ' " *Borjesson*, 92 F.3d at 956. Every court to consider these types of bar orders has concluded that they do not equate to punishment because they serve a remedial goal. See *Borjesson*, 92 F.3d at 955 (citing cases). And, this court, in the SEC context has ruled that "while securities laws may serve a deterrent purpose, they primarily seek to protect investors and remedy the unjust enrichment." *United States v. Gartner*, 93 F.3d 633, 635. (9th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 624, 136 L.Ed.2d 547 (1996).