**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Nanita SCHILLER, Defendant–Appellant.**

**No. 96–10398.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1997.

Decided July 24, 1997.

Timothy L. Zindel, Assistant Federal Public Defender, Sacramento, CA, for defendant–appellant.

Mark J. McKeon, Assistant United States Attorney, Sacramento, CA, for plaintiff–appellee.

Before: PREGERSON, FERGUSON, and KLEINFELD, Circuit Judges.

PREGERSON, Circuit Judge:

Schiller appeals the denial of her motion to dismiss the criminal charges against her for drunk driving on a military base. Schiller argues that the Double Jeopardy Clause bars her prosecution because the Air Force previously punished her for that offense by suspending her driving privileges on military installations. We have jurisdiction under 28 U.S.C. § 1292. We affirm.

## FACTS AND PRIOR PROCEEDINGS

In the early morning of July 22, 1995, Schiller was stopped by military police at Travis Air Force Base ("Travis") for driving erratically. Sobriety tests administered on the spot indicated that Schiller was under the influence of alcohol.

Later that day, Schiller received a memorandum from the Travis base commander suspending her driving privileges at Travis and other military installations for one year pursuant to Air Force Regulation ("AFR") 125–14. AFR 125–14 implements the official Department of Defense policy suspending the driving privileges of a motorist who has been arrested for driving under the influence of alcohol on a military installation. *See* AFR 125–14(2–5) (adopting 32 C.F.R. § 634.10(a)(3), (b)(3)). The Travis base commander's memorandum advised Schiller that she could request a hearing to challenge the suspension. The memorandum also stated that Schiller could request restricted driving privileges as necessary for mission requirements or personal hardship. Schiller took no action to challenge the suspension or request restricted driving privileges.

On September 12, 1995, Schiller was charged in the Eastern District of California with two counts of criminal violations under the Assimilative Crimes Act, 18 U.S.C. § 13. The Assimilative Crimes Act makes it a federal crime for a person on a military base to commit a violation of the criminal law of the state in which the base is located. *United States v. Dotson,* 34 F.3d 882, 883 (9th Cir. 1994). In Count One, Schiller was charged with driving under the influence of alcohol in violation of 18 U.S.C. § 13 and California Vehicle Code § 23152(a). In Count Two, Schiller was charged with driving with a blood-alcohol content of 0.08% or more in violation of 18 U.S.C. § 13 and California Vehicle Code § 23152(b). Claiming that she had already been punished once by the suspension of her military driving privileges, Schiller moved to dismiss the criminal charges under the Double Jeopardy Clause. The district court denied Schiller's motion to dismiss.

Schiller timely filed an interlocutory appeal from the district court's denial of her motion to dismiss. We have jurisdiction under 28 U.S.C. § 1292.

## STANDARD OF REVIEW

We review de novo a district court's denial of a motion to dismiss under the Double Jeopardy Clause. *United States v. Wright,* 79 F.3d 112, 114 (9th Cir.1996).

## DISCUSSION

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This provision protects individuals against suffering multiple punishments for the same offense. *United States v. Wolfswinkel,* 44 F.3d 782, 784 (9th Cir.1995) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).

Schiller contends that the one-year suspension of her military driving privileges constitutes a punishment within the meaning

of the Double Jeopardy Clause and therefore precludes a subsequent criminal prosecution. The Fourth Circuit addressed precisely this issue in *United States v. Imngren*, 98 F.3d 811 (4th Cir.1996), and concluded that the Double Jeopardy Clause did not apply to prohibit a subsequent criminal prosecution. *Id.* at 817. We agree with the Fourth Circuit.

■ We examine two factors to determine whether the Double Jeopardy Clause is implicated. First, we consider whether the purpose of the suspension is civil and remedial or criminal and punitive. *United States v. Merriam*, 108 F.3d 1162, 1164 (9th Cir.1997) (citing *United States v. Ursery*, —— U.S. ——, ——, ——, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549 (1996)). Second, if the purpose appears to be civil and remedial, we consider whether the form and effect of the suspension is so punitive as to render the suspension criminal despite its civil purpose. *Id.* We now address each of these two factors in turn.

## A. The purpose of Schiller's suspension

The Air Force suspended Schiller's military driving privileges pursuant to AFR 125–14, which reads:

> The objectives of motor vehicle traffic supervision are to assure-
>
> (a) Safe and efficient movement of personnel and vehicles.
>
> (b) Reduction of traffic deaths, injuries, and property damage from traffic accidents....
>
> (c) Integration of installation safety, engineering, legal, medical, and law enforcement resources into the installation traffic planning process.
>
> (d) Removal of intoxicated drivers from installation roadways followed by the expeditious application of appropriate sanctions.

AFR 125–14(1–5) (adopting 32 C.F.R. § 634.5 (1995)). Schiller argues that under subsection (d), the suspension of her military driving privileges is labelled a "sanction," which connotes a punitive purpose.

Schiller's argument has some merit. Subsection (d) distinguishes between the "[r]emoval of intoxicated drivers" and the "appro-priate sanctions" that follow removal. In Schiller's case, "removal" occurred on July 22, 1995, when she was first pulled off the road by the military police at Travis. The "sanction" that followed was the one-year suspension of Schiller's military driving privileges. Subsection (d)'s use of the term "sanction"-which connotes a punitive purpose-suggests that Schiller's suspension was intended as punishment.

On the other hand, the label attached to a given measure is not dispositive of its purpose. *United States v. Halper*, 490 U.S. 435, 447–48, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989) ("[T]he labels 'criminal' and 'civil' are not of paramount importance.... To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve."). As the Fourth Circuit concluded in *Imngren*, the sum of the regulations involved in Schiller's case indicates that the Air Force's traffic supervision program is intended to serve safety-related, civil and remedial purposes: promoting safety and efficiency, reducing accidents, integrating safety and traffic planning, and keeping drunk drivers off military roadways. *Imngren*, 98 F.3d at 815. Therefore, the AFR's statement of objectives suggests that the overriding purpose of a drunk driving suspension imposed under these regulations is safety, not punishment.

Moreover, the memorandum from the Travis base commander in this case reinforces the conclusion that Schiller's suspension was intended to be civil, not criminal. The memorandum states: "Any determinations made at the hearing [to challenge the suspension] are without prejudice to your rights or the rights of the government in subsequent criminal or administrative proceedings involving the same or a related incident. All hearing determinations will be based on the preponderance of the evidence presented." The wording of the memorandum shows that the Air Force did not intend the suspension proceedings to be conducted like criminal proceedings or to take the place of criminal proceedings.

Taken as a whole, the Air Force regulations and the Travis base commander's memorandum indicate that the suspension of Schiller's military driving privileges was intended to achieve safety-related, civil and remedial purposes. Therefore, the first factor supports a conclusion that the Double Jeopardy Clause does not bar Schiller's subsequent criminal prosecution.

### B. The form and effect of Schiller's suspension

We next consider whether the suspension is "so punitive in form and effect" as to negate the intended civil and remedial purposes of the suspension. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148. Schiller has the burden of establishing punitive form and effect with the "clearest proof." *Id.*

Schiller argues that her suspension takes a punitive form because the suspension is conditioned upon the commission of a crime. Schiller bases this argument on the Supreme Court's decision in *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Kurth Ranch,* the Supreme Court held that a drug tax constituted punishment in part because its assessment was conditioned upon the commission of a crime. *Id.* at 781, 114 S.Ct. at 1946.

Since *Kurth Ranch,* however, the Supreme Court has made clear that conditioning a measure upon the commission of a crime will not in itself render that measure criminal and punitive. To the contrary, "[i]t is well settled that 'Congress may impose both a criminal and a civil sanction in respect to the same act or omission.'" *Ursery,* —— U.S. at ——, 116 S.Ct. at 2149 (quoting *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938)). Thus, we are unpersuaded by Schiller's argument that her suspension has a punitive form merely because it was based upon her criminal act of drunk driving.

Schiller also argues that her suspension has a punitive effect because it serves the traditional goals of punishment: deterrence and incapacitation. We rejected a similar argument in *United States v. Borjesson,* 92 F.3d 954 (9th Cir.), *cert. denied,* —— U.S.

——, 117 S.Ct. 622, 136 L.Ed.2d 545 (1996). In *Borjesson,* the defendant had been administratively barred from a federal housing program after defrauding homeowners. He argued that the Double Jeopardy Clause precluded his subsequent criminal prosecution because the debarment had resulted in deterrence and incapacitation. We held to the contrary, reasoning that although some deterrence and incapacitation may inevitably result from an action meant to protect the integrity of a government program, this incidental punitive effect "does not change the essentially remedial character" of that action. *Id.* at 955–56.

In the present case, some deterrence and incapacitation inevitably result from the suspension of military driving privileges. But the fact that the suspension results in some deterrence and incapacitation does not change the essentially remedial character of the suspension. We agree with the Fourth Circuit's conclusion in *Imngren* that "the argument that suspending a motorist's driving privileges is punitive because some element of deterrence is involved is without merit." *Imngren,* 98 F.3d at 816.

Contrary to Schiller's argument, the narrow practical scope of Schiller's suspension indicates that her suspension was essentially remedial in form and effect as well as purpose. The scope of Schiller's suspension was flexible, subject to modification at any time depending upon Schiller's work and personal needs. Such flexibility is "typical of remedial suspension provisions." *Allen v. Attorney General of State of Maine,* 80 F.3d 569, 577 (1st Cir.1996). Moreover, Schiller's suspension was limited in time to one year and limited in area to military installations. These limits show the suspension to be remedial because the scope of the suspension reasonably corresponds to "the future harm the offender's conduct might portend." *Id.* The fact that Schiller's suspension only affected her ability to drive on military installation roadways also distinguishes this suspension from the general suspensions authorized for criminal violations under the California Vehicle Code.

In sum, the form and effect of Schiller's suspension "can fairly be viewed as remedial inasmuch as it is rationally related to the apprehended danger and the potential harm" of drunk driving on military bases. *Id.* Thus, although Schiller's suspension may have resulted in some deterrence and incapacitation, Schiller has failed to show by the clearest proof that her suspension was so punitive in form and effect as to negate its intended civil and remedial purposes.

## CONCLUSION

The facts of this case indicate that Schiller's military driving privileges were suspended for safety-related, civil and remedial purposes. Moreover, Schiller has failed to meet her burden of showing that the suspension was so punitive in form and effect as to qualify as a criminal punishment despite its civil purpose. Therefore, the Double Jeopardy Clause does not bar Schiller's subsequent prosecution for drunk driving. We affirm the district court's denial of Schiller's motion to dismiss.

AFFIRMED.