988 F.Supp. 1443 (1997)
Albert SLUGOCKI, Plaintiff,
v.
The UNITED STATES of America, By and Through its DEPARTMENT OF LABOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, DIVISION OF FEDERAL EMPLOYEES' COMPENSATION, Defendant.
No. 96-7105-CIV.
United States District Court, S.D. Florida.
September 22, 1997.
*1444 *1445 Arthur W. Tifford, Miami, FL, for Plaintiff.
Peter Outerbridge, Asst. U.S. Atty., Miami, FL, for Defendant.

ORDER AFFIRMING MAGISTRATE'S REPORT AND RECOMMENDATION AND DISMISSING CASE
GOLD, District Judge.
THIS CAUSE came before the Court Defendant's Motion to Dismiss (DE 12).
THE MATTER was referred to the Honorable Linnea R. Johnson, United States Magistrate. A Report and Recommendation dated August 14, 1997, has been filed, recommending that Defendant's Motion to Dismiss be GRANTED. The Plaintiff has filed an Objection to and Appeal from Report and Recommendation. The Court has reviewed the entire file and record herein, and being otherwise fully advised in the premises, it is
ORDERED AND ADJUDGED that United States Magistrate Linnea R. Johnson's Report and Recommendation of August 14, 1997, is hereby RATIFIED, AFFIRMED and APPROVED in its entirety. Plaintiff's Motion in Opposition to the Report of the Magistrate is DENIED. The Parties Joint Motion to Adjudicate Civil Action, filed September 16, 1997, is DENIED as moot. This case is DISMISSED WITH PREJUDICE.

REPORT AND RECOMMENDATION
JOHNSON, United States Magistrate Judge.
THIS CAUSE is before the Court on Defendant's Motion to Dismiss (D.E. No. 12). This matter was referred to the undersigned United States Magistrate Judge by the Honorable Ursula Ungaro-Benages, United States District Judge for the Southern District of Florida, and is now ripe for judicial review.

I. BACKGROUND

The Plaintiff, Albert Slugocki (hereinafter "Slugocki"), is a retired United States Army Special Forces Sergeant Major presently residing in Ft. Lauderdale, Florida. (Compl. ¶¶ 1, 9). Slugocki retired from the Army with a thirty percent (30%) disability in 1971 and joined the United States Marshall Service. In 1981, Slugocki retired from the Marshall Service with a medically documented service-connected disability. (Compl. ¶¶ 9, 10). Due to his government service and his disability, Slugocki started receiving disability compensation benefits from the Department of Labor, Office of Worker's Compensation Programs, Division of Federal Employees' Compensation (hereinafter the "OWCP") in 1981. (Compl. ¶ 10).
On January 11, 1995, the OWCP issued an administrative action reducing Slugocki's disability compensation by approximately one-third of a percent, making Slugocki's monthly payment twelve hundred dollars ($1,200) per month.[1] (Compl. ¶ 11). Thereafter, on January 12, 1995, the OWCP, believing that it had overpaid Slugocki, notified Slugocki of its intent to order Slugocki to forfeit to the government two hundred seventeen thousand eight hundred forty-three dollars and two cents ($217,843.02) incident to the overpayments.[2] (Compl. ¶ 12).
On February 16, 1996, a jury for the United States District Court for the Southern District of Florida entered guilty verdicts against Slugocki on nine counts of Federal Mail Fraud and six counts of making false statements in annual Federal Employees' Compensation Act (hereinafter "FECA") reports.[3] (Compl. ¶ 13). On March 15, 1996, *1446 the OWCP, issued an administrative action terminating Slugocki from the FECA program, stating that Slugocki pled guilty to the above criminal charges. (Compl. ¶¶ 14, 15, 16). The effective date of the termination of benefits was February 16, 1996. (Id.) The OWCP is alleged to have based its administrative action on 5 U.S.C. § 8148(a) which states in part,
any individual convicted of a violation of Section 1920 of Title 18, or any other Federal or State criminal statute relating to fraud in the application for or receipt of any benefits ..., shall forfeit (as of the date of such conviction) any entitlement to any benefits such individual would otherwise by entitled to under this subchapter or subchapter III for any injury occurring on or before the date of such conviction.[4]
5 U.S.C. § 8148(a). On April 2, 1996, Slugocki requested an oral hearing of the OWCP's decision to terminate his benefits, which he later amended on April 26, 1996. (Compl. ¶ 17). Slugocki alleges that six months went by without the OWCP taking any administrative action thereby converting the agency's inaction into a denial of hearing by the OWCP. (Compl. ¶ 17).

II. STANDARD OF REVIEW

Defendant's Motion to Dismiss is predicated on Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Finding only Rule 12(b)(1) applicable herein, the following analysis shall be so limited. A 12(b)(1) Motion to Dismiss raises the question of the federal court's subject matter jurisdiction, a question which may be inquired into at any stage of the proceedings. Fitzgerald v. Seaboard Sys. R.R., Inc., 760 F.2d 1249 (11th Cir.1985) (per curiam); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). The motion itself may be directed at two different types of defects. A "facial attack" on the complaint "requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction ..." Id. at 511. In this respect the allegations of the complaint are taken as true. Id. A "factual attack", on the other hand, "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings." Id. In this posture, the allegations of the complaint, although taken as true, may be tested by extraneous evidence. Id. In other words, "no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir.1990) (per curiam). When the attack is factual, plaintiff bears the burden of proving that jurisdiction does in fact exist. Menchaca, 613 F.2d at 511.

III. LEGAL ANALYSIS

As the Complaint makes clear, all elements of Slugocki's claim stem solely from the administrative termination of his FECA benefits, which termination became effective February 16, 1996, the day he was found guilty of 15 counts of fraud relating to his receipt of FECA benefits. Essentially, Slugocki charges the Government with five errors which he contends all rise to Constitutional dimensions: (1) the erroneous citation to a guilty plea rather than a guilty verdict rendered against Slugocki following a jury trial; (2) an alleged delay in Slugocki's request for an administrative hearing; (3) the so-called "non-finality" of Slugocki's criminal conviction; (4) the ex-post facto application of 5 U.S.C. § 8148(a); and, (5) the supposed double jeopardy effect of 5 U.S.C. § 8148(a).[5]
As the United States mounts a "factual attack" challenging the existence of subject matter jurisdiction, Slugocki bears the burden of showing that subject matter jurisdiction does, indeed, exist. Menchaca, 613 F.2d at 511. Here, Slugocki has failed to meet this burden.
In Woodruff v. U.S. Department of Labor, 954 F.2d 634, 636-37 (11th Cir.1992) the *1447 Eleventh Circuit defined the prism through which the issues before us must be viewed. There, the Court described Section 8148 as a door-closing provision, noting that "[t]he Secretary's decision to award or deny [or terminate] compensation to a particular claimant is not subject to judicial review." The only exception to this basic proposition is when the claim involved raises a real and substantial constitutional question. In these instances federal courts retain jurisdiction. Id. at 639. This is because the nature of constitutional questions renders them unsuitable for determination in an administrative hearing, making access to the courts essential to their disposition. Rodrigues v. Donovan, 769 F.2d 1344, 1347 (9th Cir.1985). However, simply alleging a constitutional claim is not adequate to overcome a door-closing statute. Reid v. Engen, 765 F.2d 1457, 1461 (9th Cir.1985). Thus, the threshold issue on each of Slugocki's five claims is whether "the casting of [his] claim in constitutional terms is a mere `rhetorical cover' for a claim for benefits that the door-closing statutes are intended to block." Czerkies v. U.S. Dept. of Labor, 73 F.3d 1435, 1442 (7th Cir.1996). If so, this court lacks jurisdiction over the claim. If not, then the question becomes whether the "constitutional claim [is] insubstantial" Id. at 1442, or without merit as a matter of law.

1. REFERRAL TO A GUILTY PLEA AS OPPOSED TO A GUILTY VERDICT

It is elementary that the mischaracterization of a guilty verdict as a guilty plea as a basis for the decision to terminate disability benefits does not rise to the level of a constitutional claim. Slugocki appears to concede as much when he fails to address this argument anywhere in his Response brief. Accordingly, this Court finds the subject claim fails to rise to a constitutional level which would warrant the exercise of jurisdiction.

2. SIX MONTH PERIOD BETWEEN FILING OF NOTICE OF APPEAL AND NOTICE OF APPEAL

Slugocki makes the argument that the six month delay between his request for a hearing regarding the termination of his disability benefits and the notice of hearing constitutes a de facto denial of the appeal and consequent violation of due process. In his Opposition to Defendant's Motion to Dismiss, Slugocki details the treatment which he describes as "callous" that he received at the hands of the OWCP and posits that further administrative review would be futile.
Courts have recognized that "at some point, a delay in the post-termination hearing would become a constitutional violation." Rodrigues v. Donovan, 769 F.2d 1344, 1348 (9th Cir.1985). Inherent in any bureaucracy, however, is a certain amount of inefficiency and delay, Isaacs v. Bowen, 865 F.2d 468, 477 (2d Cir.1989), and the mere allegation of delay "without an explanation of why the delay is unreasonable" does not support a claim for due process. Matter of Claim for Compensation Under Longshore & Harbor Workers' Comp. Act, 889 F.2d 626, 633 (5th Cir.1989), cert. denied, 494 U.S. 1082, 110 S.Ct. 1813, 108 L.Ed.2d 944 (1990). While Slugocki proffers reasons why further administrative review would prove futile, he offers no concrete explanation as to why the six-month delay is unreasonable. Delays of even longer duration have been found insufficient to support a due process claim. Matter of Claim for Compensation Under Longshore & Workers' Comp. Act, 889 F.2d at 633; Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985)("a 9-month delay in adjudication is not ... unconstitutionally lengthy per se").
Considering that "delay is a natural concomitant of our administrative bureaucracy" Isaacs v. Bowen, 865 F.2d 468, 477 (2d Cir. 1989), and noting that 5 U.S.C. § 8124(a) has no deadline for acting on a notice of appeal, this Court finds there can be no undue delay here asserted, let alone proven, to be a denial of due process.

3. "NON-FINALITY" OF THE CRIMINAL CONVICTION

Next Slugocki argues that because his conviction is presently on appeal, any action to terminate his benefits is premature. Essentially, Slugocki contends he has not been "convicted" as that term is used in § 8148(a) until all appellate procedures have been exhausted.[6] Once again Slugocki has *1448 failed to raise a "substantial constitutional claim". Indeed he has not even bothered to couch his claim in constitutional terms. What he seeks instead is a mere interpretation of the term "conviction" as used in § 8148(a): A task properly before the Secretary. See United States v. Cabrera, 786 F.2d 1097, 1098 (11th Cir. 1986) ("[w]hether one is convicted within the language [of a federal statute] is a question of federal law"). Accord Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 111-12, 103 S.Ct. 986, 991-92, 74 L.Ed.2d 845 (1985). Stated differently, the issue is one of statutory construction, which is outside the ambit of the limited jurisdiction of this Court. See Woodruff, 954 F.2d at 639.
Even if one were to consider Slugocki's claim as having constitutional dimension, the fact remains that Courts which have interpreted the term "conviction" in other statutes have routinely held that a conviction pending appeal is sufficient to subject a person to the restrictions of a federal statute. See, e.g., United States v. Woods, 696 F.2d 566, 569 (8th Cir.1982) (firearms statute); United States v. Fleming, 9 F.3d 1253, 1254 (7th Cir.1993) (revocation of probation); United States v. Hofierka, 83 F.3d 357, 363-64 (11th Cir.) (same), modified on other grounds, 92 F.3d 1108 (11th Cir.1996); United States v. Jennings, 724 F.2d 436, 449 (5th Cir.) (suspension of attorney's license), cert. denied, 467 U.S. 1227, 104 S.Ct. 2682, 81 L.Ed.2d 877 (1984). Of further import is the fact that § 8148(a) contains no requirement that all appeals be exhausted before a conviction can be said to be a conviction and the terms of the statute be put into effect. See Woods, 696 F.2d at 569 (holding that penalty portion of firearms statute to take effect after conviction did not require the exhaustion of all appeals and noting that the statute at issue there "contain[ed] no requirement that the conviction be finally upheld on appeal").

4. EX POST FACTO APPLICATION OF 5 U.S.C. § 8148(a)

Slugocki argues that the OWCP's application of 5 U.S.C. 8148(a) to his case is punitive in nature and, as such, is an ex post facto application which is barred by the Constitution. Manocchio v. Kusserow, 961 F.2d 1539, 1541 (11th Cir. 1992) (holding that the ex post facto clause applies only to punitive actions). This Court finds Slugocki's ex post facto argument wholly without merit.
In reviewing the legislative history related to the enactment of § 8148, it is clear that the primary goal of this section is to deny benefits to those who attempt to defraud the OWCP and that the punitive sting is a secondary consequence of the forfeiture. While speaking in favor of adopting § 8148, Congressman Fawell stated that effect of this bill
[would] enhance the deterrent value of the Federal Employee's Compensation Act, enable the government to punish those who defraud the program; [and] most importantly, save the taxpayers the cost of supporting those who defraud the program.

Cong.Rec. H. 9454, Sept. 22, 1994. (emphasis added). Clearly Congress intended this bill to prevent the loss of millions of dollars to FECA fraud and recognized the punitive aspects as secondary to the bills remedial goal.
In Peeler v. Heckler, 781 F.2d 649, 651 (8th Cir.1986), the Eighth Circuit ruled that "[i]f the law in question is focused on the past crime, then it is likely intended as punishment, while if the focus is upon the benefit from which the person is barred, it is not, even though the impact on the person may be harsh." Here, the focus of § 8148(a), by its own terms, is clearly on the benefit, not on the crime.
Slugocki asks this Court to focus solely on the punitive language of the legislative history and ignore the mandate of the Eleventh Circuit that the legislative history "be taken as a whole." Manocchio, 961 F.2d at 1542. *1449 This, the Court cannot and will not do. The Eleventh Circuit has ruled that when the legislative intent is to protect the present and future beneficiaries of public works programs, the sanction is not punitive but rather remedial in nature. Manocchio, 961 F.2d at 1542. Furthermore, even where "there is some indication that Congress intended the statute in part to be punitive ... [the] court need not invalidate the statute." Jensen v. Heckler, 766 F.2d 383, 386 (8th Cir.) (citations omitted), cert. denied, 474 U.S. 945, 106 S.Ct. 311, 88 L.Ed.2d 288 (1985) so long as logical non-punitive goals are also sought. Tremblay v. Riley, 917 F.Supp. 195, 198 (W.D.N.Y.1996).
Moreover numerous courts, including the Supreme Court, have ruled in a variety of contexts that such enactments are constitutional. Thus in Jensen, 766 F.2d at 386, the Eighth Circuit ruled that a 1980 amendment to the Social Security Act, which barred payment of social security disability benefits to persons in prison on a felony conviction, could constitutionally be applied to a person in prison based upon a 1977 conviction. See also Wiley v. Bowen, 824 F.2d 1120 (D.C.Cir. 1987). Importantly the Courts in Jensen and Wiley based their decisions on the fact that social security benefits, including the disability benefits at issue in Jensen, were "noncontractual benefits" and, as such, the statute was deemed "neither an ex post facto law nor a bill of attainder because the suspension of a noncontractual benefit cannot be considered a punishment." Jensen, 766 F.2d at 386. (Citing Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). See also Bae v. Shalala, 44 F.3d 489, 492 (7th Cir. 1995); Zipkin v. Heckler, 790 F.2d 16 (2d Cir.1986).
Similarly, in Manocchio v. Kusserow, 961 F.2d 1539 (11th Cir.1992), the Eleventh Circuit ruled that a mandatory five-year exclusion from participation in Medicare programs based upon a conviction for a medicare fraud, which exclusion went into effect in 1987, could be applied to a 1984 incident. In so ruling the Court noted,
While the desire to provide a deterrent is a punitive goal, we find that the legislative history, taken as a whole, demonstrates that the primary goal of the legislation is to protect present and future Medicare beneficiaries from the abusers of these programs. Therefore, since the legislative intent of the exclusionary period is to protect the public, the sanction is remedial, not punitive.
Id. at 1542.
In accordance with the foregoing and in light of the legislative history "taken as a whole", this Court finds § 8148 to be primarily remedial in nature with secondary punitive effects. Slugocki's constitutional ex post facto claim must, therefore, fail because the punitive result is merely an incident of the remedial purpose of § 8148.

5. DOUBLE JEOPARDY CHALLENGE TO THE APPLICATION OF § 8148(a)

As a final argument, presented in his Opposition to Defendant's Motion to Dismiss, Slugocki contends that since he has already received punishment for mail fraud and for making false representations on FECA applications through his criminal convictions, termination of his disability benefits under 5 U.S.C. § 8148 constitutes a civil punishment and, therefore, violates the U.S. Constitution's double jeopardy clause. See U.S. v. Halper, 490 U.S. 435, 448-49, 109 S.Ct. 1892, 1901-02, 104 L.Ed.2d 487 (1989). Again, Slugocki fails to support this alleged constitutional violation.
The double jeopardy clause of the Constitution provides for "protection against multiple punishments for the same offense." United States v. Reed, 937 F.2d 575, 576 (11th Cir.1991). The same basic analysis applies to both ex post facto and double jeopardy claims, namely, whether the exclusionary provision is punitive in nature. Slugocki's contention that United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) is controlling in this case is specious.
"The Halper dichotomy does not apply to non-monetary sanctions." Reed, 937 F.2d at 578 (11th Cir.1991); See also U.S. v. Stoller, 78 F.3d 710, 718 (1st Cir.), cert. dismissed, ___ U.S. ___, 117 S.Ct. 378, 136 L.Ed.2d 297 (1996). Halper presented a rare case where a fixed penalty was found to be "overwhelmingly disproportionate to the *1450 damage caused". 490 U.S. at 449, 109 S.Ct. at 1902. This case stands on an entirely different footing. Again, the double jeopardy analysis, which dovetails with that of the ex post facto analysis, hinges on whether the goal of the statute is punitive or remedial. Although remedial goals may resemble punitive ones, the resemblance does not change the remedial character of debarment. U.S. v. Borjesson, 92 F.3d 954, 955-56 (9th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 622, 136 L.Ed.2d 545 (1996). Whether the sanction is remedial or punitive in nature must be determined by a review of the totality of the circumstances. Stoller, 78 F.3d at 724. Such a determination does not rest with the perspective of the one affected, "as even remedial sanctions carry the `sting of punishment.'" Department of Revenue v. Kurth Ranch, 511 U.S. 767, 777 n. 14, 114 S.Ct. 1937, 1945 n. 14, 128 L.Ed.2d 767 (1994) (quoting United States v. Halper, 490 U.S. 435, 447 n. 7, 109 S.Ct. 1892, 1901 n. 7, 104 L.Ed.2d 487 (1989)). "Even permanent disbarment [from benefits] has been found to be remedial if it protects government programs from corruption." U.S. v. Borjesson, 92 F.3d at 956 n. 3.
The result of the analysis from a double jeopardy perspective yields to only one conclusion; that § 8148(a) is remedial in nature, carrying only the `sting of punitive sanctions.' Congress's purpose in adopting § 8148(a), as evidenced by the whole legislative history, was to avoid paying benefits to individuals attempting to defraud the government. In sum, Slugocki's claim that application of § 8148(a) to his case constitutes criminal and civil punishment for the same crime thereby violating the Constitution's double jeopardy clause fails, as the primary goal of § 8148(a) is remedial, not punitive.

IV. CONCLUSION

In accordance with the above and foregoing, it is hereby
RECOMMENDED that Defendant's Motion to Dismiss be GRANTED.
The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Ursula Ungaro-Benages, United States District Court Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir.1988), cert. denied, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir.1993).
RESPECTFULLY SUBMITTED this 14th day of August, 1997 at Miami, Florida.
NOTES
[1] The January 11, 1995 administrative action which reduced Slugocki's benefits is the subject of a separate administrative review.
[2] The January 12, 1995 administrative action ordering the forfeiture of the calculated overpayment is also the subject of a separate administrative review.
[3] Slugocki was also charged with violations of 18 U.S.C. § 1920. These charges were dismissed prior to trial.
[4] The OWCP originally cited § 102 of the Public Law 103-112 (107 Stat. 1089, October 21, 1993) as the basis for its decision to terminate Slugocki's benefits, and changed the citation to 5 U.S.C. § 8148 in a letter dated December 6, 1996. (Compl. ¶ 16, Slugocki's Response, p. 16).
[5] The double jeopardy argument was first introduced by Slugocki in his Opposition to Defendant's Motion to Dismiss in an effort to more fully explain his position.
[6] Section 8148(a)of Title 5 provides:

Any individual convicted of a violation of Section 1920 of Title 18, or any other Federal or State criminal statute relating to fraud in the application for a receipt of any benefit under this subchapter or subchapter III of this chapter, shall forfeit (as of the date of such conviction) any entitlement to any benefit such individual would otherwise be entitled to under this subchapter or subchapter III for any injury occurring on or before the date of such conviction. Such forfeiture shall be in addition to any action the Secretary may take under Section 8106 or 8129.